Commonwealth *v.* Ritchey, Petitioner.

Before BELL, C. J., MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*William Ritchey*, appellant, in propria persona.

*Charles C. Brown, Jr.*, District Attorney, for Commonwealth, appellee.

OPINION BY MR. JUSTICE ROBERTS, September 5, 1968:

Appellant's petition under the Post Conviction Hearing Act was dismissed by the hearing court and the denial of relief was affirmed per curiam by the Superior Court. We granted leave to file a petition for allocatur to examine appellant's claimed denial of his right to counsel.

Petitioner was one of three inmates in the State Correctional Institution at Rockview, Centre County, who escaped on October 29, 1958. All three were apprehended the next day in Harrisburg and on November 18, 1958 all three appeared in court. Petitioner and Kenneth John Wagner were without counsel; Paul Custalow had retained Attorney Thomas Gill to represent him. At the outset of the hearing the following colloquy took place: "THE COURT: Q. Do either of you gentlemen desire counsel? A. By Mr. Wagner: No, sir. By Mr. Ritchey: No, sir. Q. You understand that you are entitled to Counsel if you would like to have it? A. By Mr. Wagner: No. By Mr. Ritchey: No. THE COURT: Let the record show that Mr. Gill, Attorney for

Mr. Custalow, explained to all three of the defendants their Constitutional rights and right of Counsel. Would you please do that, Mr. Gill? (Mr. Gill consults with all three defendants and then states to the court that the defendants, Mr. Wagner and Mr. Ritchey, have indicated that they do not desire counsel.)" The indictments were then handed to the defendants and written pleas of guilty were entered thereon by each defendant. Appellant did not prosecute an appeal from the entry of the guilty plea.

Appellant filed a habeas corpus petition in late 1964, alleging among other things that he had been represented by ineffective counsel, that he had been denied his requests for counsel at the preliminary stages of the proceedings, that he had no counsel and that the "appointment" of counsel had been merely for the purpose of lending legality to the proceedings. This petition for a writ of habeas corpus was dismissed. That determination was affirmed by the Superior Court. Relief subsequently was denied by this Court and the United States District Court for the Western District of Pennsylvania.

In December 1966 appellant filed the present petition under the Post Conviction Hearing Act. This petition differs from the earlier one in that petitioner contends at this juncture that he was never informed of his right to *free* counsel if he was indigent.[1]

---

[1] It could be argued that petitioner's failure to raise this issue at the first habeas corpus proceeding works a waiver of any further opportunity to litigate the issue. The relevant part of the Post Conviction Hearing Act, Act of January 25, 1966, P. L. (1965) 1580, §4, 19 P.S. §1180-4 (Supp. 1967) states: "(b) For the purpose of this act, an issue is waived if: (1) The petitioner knowingly and understandingly failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a *habeas corpus proceeding* or any other proceeding actually conducted . . . ." (Emphasis added.)

The Sixth Amendment to the Constitution of the United States, which is applicable to criminal proceedings in state courts, requires that the accused be given the assistance of counsel at every critical stage of a criminal prosecution. *White v. Maryland,* 373 U.S. 59, 83 S. Ct. 1050 (1963); *Gideon v. Wainwright,* 372 U.S. 335, 83 S. Ct. 792 (1963). We have held repeatedly that the hearing on a guilty plea is such a critical stage. *Commonwealth ex rel. Fairman v. Cavell,* 423 Pa. 138, 222 A. 2d 722 (1966); *Commonwealth ex rel. O'Lock v. Rundle,* 415 Pa. 515, 204 A. 2d 439 (1964). In the latter case we said: "Surely, such a hearing is a stage where rights might be preserved or lost. It is, in our view, as critical a stage for the accused as any he faces in the criminal proceedings against him."

Of course, it is impossible to "force" counsel on an indigent defendant, *Moore v. Michigan,* 355 U.S. 155, 161, 78 S. Ct. 191, 195 (1957), and the right may be effectively waived. However, a determination that the right in fact has been waived must be carefully made with due regard for the possible limited knowledge and appreciation by the defendant of the ramifications of the right. *Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S. Ct. 1019, 1023 (1938). Our courts must be cautious in finding waiver of a constitutional right so fundamental and so pervasive. And as a first principle, the court must make certain that the accused understands the full dimensions of the right. It cannot be assumed

---

In view of the fact that petitioner was represented by counsel at his first habeas corpus hearing this argument would be persuasive. *Commonwealth v. Satchell,* 430 Pa. 443, 243 A. 2d 381 (1968). However, we may assume that the Commonwealth's complete failure to assert the waiver issue at *any* stage of these proceedings, including appeal, indicates a deliberate judgment by the prosecution that a waiver, in fact, cannot be shown on this record. The Commonwealth having thus abandoned any possible section four waiver claim, the case comes to us without that issue.

that the accused understands any element of the right which has not been explicitly explained. For example, in the instant case petitioner was told only that he was "entitled to counsel." A careful examination of the record has failed to establish any evidence which would lead us to conclude that appellant was ever informed that he was entitled to *free* counsel. The trial judge instructed the attorney for Ritchey's co-defendant to explain the right of counsel to appellant. The content of this explanation does not appear of record nor was Mr. Gill able to recall whether the exact nature of the right to counsel was ever discussed. His testimony was: [BY THE DISTRICT ATTORNEY] : "Q. Mr. Gill, do you remember what discussion you had with Mr. Ritchey in particular, as to his constitutional rights and his right to any attorney? A. I cannot remember, Mr. Harris, any specific wording or the extent of the discussion. It took place, I am not too sure, here in the court room, at the counsel table after an explanation had already been given and an offer made by the court to the two defendants that were not represented by counsel, to provide them with counsel, at the request of the court, I made a further more private explanation of this, that is in a conversation between myself and the two individuals but as I say, I am reasonably sure it was at the counsel table. It was a fairly brief discussion, but sufficient to satisfy myself that they apparently were making an informed decision and statement to me which I then repeated to the Court that they did not desire counsel. Q. Mr. Gill, do you hear Mr. Ritchey's testimony here today that all of . . . all you told him was that he had a right to counsel? A. Yes sir. Q. Does your recollection include that you told him more than just that? A. I can't say specifically but I would say probably the conversation was a little more longer than that state-

ment."[2]  Record of 1965 Habeas Corpus Proceeding, pp. 24-25.

Therefore, it would seem that appellant raises a valid argument when he asserts: "Nowhere has any proof been offered, nor has it ever been contended by the Commonwealth, that appellant was ever informed nor made aware that counsel would be appointed to appellant free of cost." Merely telling a defendant that he is "entitled" to counsel will be a meaningless gesture if he is not made aware that *free* counsel will be supplied if necessary.[3]  We reaffirm our earlier holding

[2] This absence from the Record of any discussion should re-alert trial courts and counsel on both sides to the importance this Court has placed on any discussions related to the entry of a guilty plea being included on the record. We said in *Commonwealth ex rel. West v. Rundle*, 428 Pa. 102, 105-06, 237 A. 2d 196, 198 (1968): "If these convictions are to be insulated from attack, the trial court is best advised to conduct an on the record examination of the defendant which should include, inter alia, an attempt to satisfy itself that the defendant understands the nature of the charges, his right to a jury trial, the acts sufficient to constitute the offenses for which he is charged and the permissible range of sentences." See Roberts, Expanding Professional Responsibilities in the Field of Criminal Law, 37 Pa. Bar Assoc. Q. 222, 228 (1966). See also American Bar Assoc. Project on Minimum Standards for Criminal Justice, Pleas of Guilty, pages 6-9 (Tent. Draft 1967).

[3] Ritchey's testimony at the hearing exemplifies the problems involved: [BY THE DISTRICT ATTORNEY]: "Q. Now, didn't you talk to Mr. Gill before you entered your plea of guilty? A. No, Sir, I did not. Q. You never talked to him? A. No. He was supposed to tell us about our right to counsel, but the only thing I recall was giving him a power of attorney to make a statement. . . . Q. I thought you said you didn't talk to him? A. He talked to all three of us. We had a conversation—the conversation was between three people, but I didn't say anything to him. Q. Did you ever talk to Mr. Gill about this before you entered your plea? A. The only thing I told Mr. Gill I didn't want counsel. Q. You didn't want counsel? A. No, Sir. Q. And he told you you had a right to counsel if you wanted it? A. He said if I wanted an attorney, I could have one. Q. You told him you didn't want one? A. Yes, Sir. Q. And, therefore, you are now saying that you didn't have a counsel

that as a matter of law there cannot be a finding of a knowing and intelligent waiver of the right to counsel unless the accused shall have been explicitly informed that he is entitled to *free* counsel if he is indigent. *Commonwealth v. Wilson,* 430 Pa. 1, 241 A. 2d 760 (1968); *Commonwealth v. Ezell,* 431 Pa. 101, 244 A. 2d 646 (1968). Application of this rule will avoid unnecessary situations like the present case where it is clear that the appellant did not understand the full meaning of the right to counsel.[4]

Since the guilty plea record is silent as to whether this defendant was told that counsel would be supplied without cost to him, the burden of proof is upon the Commonwealth to demonstrate he was so informed in order to establish a knowing and intelligent waiver.

---

at all? A. Because I wasn't advised I could have one free of cost. I wasn't aware that I could have an attorney at any time. Q. Did you ask Mr. Gill whether or not you had to pay for an attorney? A. No, Sir. Q. And other than that, that's the only reason you said you didn't want an attorney? A. Yes, Sir. Q. And if you had known that you could have had one appointed for you, you would have asked for one? A. Yes, Sir. Q. And if you would have had counsel, in what way do you think that would have changed the outcome of the case? A. I wouldn't know. I have no idea. Q. Would you have told him facts that were not before the court before; was there anything that wasn't told to the court at the time you plead guilty? A. I couldn't say. It's a possibility. I might have and I might not have."

[4] This holding is not unlike our determination in *Commonwealth v. Wilson,* 430 Pa. 1, 241 A. 2d 760 (1968), where appellant was informed of his right to appeal, but was not explicitly informed that he was entitled to free counsel. There we said that the accused must be told of both rights. If not "an accused's decision to appeal may well be influenced by whether he knows that court-appointed counsel is available." What was said in *Wilson* is equally applicable here where the right involved is certainly as crucial as the right of appeal. A defendant's decision whether or not to waive his right to trial counsel may in large measure hinge on whether he knows that such counsel will be supplied free of charge, if defendant is indigent.

*Commonwealth v. Wilson,* 430 Pa. 1, 241 A. 2d 760 (1968). Ordinarily, in cases where the post-conviction hearing pre-dated our *Wilson* decision, we would remand the proceeding to allow the Commonwealth to meet this burden if it could. But no such remand is necessary in the present case since the transcript of the hearing clearly demonstrates that counsel for appellant's co-defendant (the only man in a position to tell appellant of his rights) could not specifically recall what he told appellant during the short conference prior to the entry of the guilty plea. The possibility of appellant having learned of his right to free counsel from any other source on this record is sheer speculation.[5]

Accordingly, the petition for allocatur is granted, the order of the Superior Court is reversed, the order of the Court of Quarter Sessions of Centre County is vacated and the record remanded for a new trial.

---

[5] This accords with our disposition in *Commonwealth v. Ezell,* 431 Pa. 101, 244 A. 2d 646 (1968), in which this Court decided that immediate relief could be granted where the record showed that it would be practically impossible for the Commonwealth to meet its burden of proof on remand.